IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUD MINTON,<br><br>    Plaintiff,<br><br> v.<br><br>DELOITTE AND TOUCHE USA LLP PLAN,<br><br>    Defendant.<br>_____/<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Real Party in Interest.<br>_____/ | No. 09-05636 CW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT |

    Plaintiff Bud Minton moves for summary judgment on his claims against Defendant Deloitte and Touche USA LLP Plan and Real Party in Interest Metropolitan Life Insurance Company (MetLife) (collectively, Defendant) for long term disability (LTD) benefits based on his inability to work in "any occupation"[1] and for a supplemental benefit, both under the Employee Retirement Income Security Act (ERISA), 28 U.S.C. § 1132, and for interest on late payments of ERISA benefits under California Insurance Code § 10111.2.  Defendant opposes the motion and cross-moves for dismissal of the supplemental benefit claim for failure to exhaust

---

[1] After Plaintiff filed his complaint, Defendant awarded him benefits under the "any occupation" definition of disability. Therefore, Plaintiff's ERISA claim for an award of these benefits is moot.

administrative remedies and for summary judgment.  The motions were taken under submission on the papers.  Having considered all the papers filed by the parties, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motions to dismiss and for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff formerly worked as a graphics designer for Deloitte and Touche (Deloitte) and was a participant in the Deloitte and Touche USA LLP Plan (Plan).  Deloitte administers the Plan.  MetLife is the funding source and the claim fiduciary for the Plan.

In a previous lawsuit against the same Defendant, <u>Minton v. Deloitte and Touche USA LLP Plan (Minton I)</u>, C 08-1941 CW, the Court granted Plaintiff's motion for judgment, concluding that he was eligible for LTD benefits under the Plan's "own occupation" definition of disability.  The Court remanded Plaintiff's claim for benefits under the "any occupation" Plan provision and the supplemental benefit provision.

FACTUAL BACKGROUND

Participants in the Plan can choose coverage equal to either fifty percent or 66 2/3 percent of their basic monthly salary.  On March 1, 1997, the option of a supplemental benefit was added for participants at the 66 2/3 level.  If participants chose to pay for the supplemental benefit, they had three coverage options ranging from $250 to $917 of additional monthly benefits.[2]  Participants

---

[2] The maximum supplemental benefit increased over time, reaching $1,250 per month in 2006, when Plaintiff became disabled.  AR at 330, 366.

2

could apply for the supplemental benefit, without evidence of good health, only during the first thirty-one days they were eligible for coverage. AR at 475, 206. The supplemental benefit was first announced in a rider amending the Plan. Administrative Record (AR) at 201. Thereafter, it was included in the Supplemental Plan Description (SPD) for the years 1998 and 2000 through 2007. AR at 208, 224, 242, 261, 283, 308, 330, 366 and 435.

It was Deloitte's practice to distribute documents describing employee benefits to each employee by way of the employee's individual mailbox. Curtin Dec. at ¶ 3. Due to changes in its computer system, Deloitte does not have specific information as to how notice of the supplemental benefit was given to Plaintiff, but it was Deloitte's custom and practice to provide notice of all changes to insurance plans. Id. at ¶¶ 3-4. Starting in 1999, all information about the Plan, including the SPD, was available to all employees on Deloitte's intranet. Id. at ¶ 5. MetLife's computerized records show that at least twenty-two Plan participants became disabled between January, 1997 and December, 1998 and, of those twenty-two, four received the supplemental benefit. Hallford Dec. at ¶ 3.

Plaintiff enrolled in the Plan on November 13, 1990, prior to the availability of the supplemental benefit. Plaintiff enrolled in the 66 2/3 percent of salary coverage option. AR at 164. Plaintiff was never again presented with a LTD insurance application form or asked to review his coverage, and disability insurance was not part of the annual open enrollment process. AR at 185, 187. According to Plaintiff, the Plan first disclosed the

3

availability of the supplemental benefit in the March, 1998 edition of the LTD handbook which served as the SPD. AR at 202. Plaintiff states that he did not become aware of the supplemental benefits until his counsel discovered it during the prosecution of Minton I.

On September 14, 2009, after the remand of his first lawsuit, Plaintiff wrote to MetLife requesting payment of LTD benefits under the "any occupation" provision of the Plan, and the supplemental benefit. On September 20, 2009, Plaintiff presented the same request to counsel for Deloitte, the Plan Administrator.

On September 24, 2009, MetLife wrote to Plaintiff that it was extending its time to make a determination regarding LTD benefits under the "any occupation" definition of disability because it had not yet received requested medical information. AR at 703-04. On September 24 and October 5, 2009, MetLife contacted Deloitte and inquired whether its records showed that Plaintiff had applied and paid for the supplemental benefit. AR at 571, 694. On October 6, 2009, James Blakely, from Deloitte, responded that Plaintiff had not applied for the supplemental benefit and never paid for such coverage. AR at 472.

On December 4, 2009, MetLife wrote to Plaintiff's counsel that Plaintiff was eligible for LTD benefits under the "any occupation" definition of disability, but that he had not applied for the supplemental benefit. AR at 678. The letter indicated that the decision could be appealed by sending a written request to MetLife within 180 days of receipt of the denial letter. Id. at 679. Plaintiff is currently receiving LTD benefits under the "any occupation" provision of the Plan.

4

DISCUSSION

Plaintiff's motion for summary judgment addresses his claim under ERISA for the supplemental benefit and his claim under the California Insurance Code for interest on late benefits payments. In his claim for the supplemental benefit, Plaintiff asserts that MetLife breached its fiduciary duty by failing to tell him that he was entitled to apply for the supplemental benefit and during the thirty-one day period that he was eligible without proof of good health. Defendant moves to dismiss this claim on the ground that Plaintiff failed to exhaust administrative remedies before filing this lawsuit. Plaintiff does not address exhaustion in his reply. Defendant argues that, because Plaintiff fails to address the issue, he concedes it.

I. Motion to Dismiss for Lack of Exhaustion

Although not explicitly set out in ERISA, the Ninth Circuit has announced as a general rule that a claimant for ERISA benefits must exhaust administrative appeals prior to filing an action in district court. Amato v. Bernard, 618 F.2d 559, 566-568 (9th Cir. 1980). Numerous policy considerations underlie this rule, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a non-adversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise. Id. "Consequently the federal courts have the authority to enforce the exhaustion requirement of suits under ERISA, and as a matter of sound policy they should usually do so." Id. at 568.

After Amato, the Ninth Circuit has affirmed the dismissal of

ERISA claims for failure to exhaust administrative remedies. See e.g., Diaz v. United Agr. Employee Welfare Benefit Plan, 50 F.3d 1478, 1483 (9th Cir. 1995) (affirming dismissal for lack of exhaustion where ERISA plan provided for internal appeal procedures which were adequate and appeal was not futile); Sarraf v. Standard Ins. Co., 102 F3d 991, 993 (9th Cir. 1996) (failure to request in writing review of administrator's adverse decision, as required by ERISA plan, precluded ERISA claims); see also, Glaus v. Kaiser Found. Health Plan, 2009 WL 2905961, at *2 (N.D. Cal) (where ERISA plan provided for administrative remedies, exhaustion was not optional even if plan used optional language).

Here, the Plan provides for the administrative appeal of adverse decisions. AR 33. It is undisputed that Plaintiff did not appeal MetLife's adverse decision regarding his claim for the supplemental benefit.

In his complaint, Plaintiff alleges, "Following remand the Plan has neither granted nor denied the appeal, and the time for it to do so has expired, both under 29 C.F.R. § 2560.503-1, and under the order of the Court. Mr. Minton has exhausted his administrative remedies."

Section 2560.503-1(f) provides,

> if a claim is wholly or partially denied, the plan administrator shall notify the claimant . . . of the plan's adverse benefit determination within a reasonable time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing the claim is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90-day period.

6

The Plan provides that MetLife must provide notification of its decision regarding a claim for benefits

> within a reasonable period, not to exceed 45 days from the date you submitted your claim; except for situations requiring an extension of time because of matters beyond the control of the Plan, in which case MetLife may have up to two (2) additional extensions of 30 days each to provide you such notification. . . . If an extension is needed because you did not provide sufficient information or filed an incomplete claim, the time from the date of MetLife's notice requesting further information and an extension until MetLife receives the requested information does not count toward the time period MetLife is allowed to notify you as to its claim decision.

AR at 32.

As noted above, Plaintiff filed his claim on September 14, 2009 and, on September 24, 2009, MetLife wrote to Plaintiff informing him that it had not yet received all of his medical records and that it would make a decision on his claim after it had received the requested information. AR at 703-04. Plaintiff sent the requested medical information on September 30, 2009 (AR at 695), October 9, 2009 (AR at 682) and October 27, 2009 (AR at 680). On November 12, 2009, Plaintiff's attorney informed MetLife that Plaintiff's medical record was complete. AR at 575. On December 4, 2009, MetLife sent Plaintiff's attorney a letter that Plaintiff's claim for LTD benefits under the "any occupation" definition was approved and that the claim for supplemental benefits was denied.

Because MetLife informed Plaintiff of the need for additional medical information within the time period allowed by § 2560.503-1(f) and by the Plan, and because MetLife made a decision regarding Plaintiff's claim less than thirty days after he informed MetLife

7

that his record was complete, MetLife's decision was timely. Therefore, Plaintiff's argument that he is not required to exhaust because MetLife's decision was untimely fails. Defendant's motion to dismiss the ERISA supplemental benefit claim for lack of exhaustion is granted. However, as discussed below, even if Plaintiff had exhausted this claim, it would fail on the merits.

II. Motions for Summary Judgment

    A. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts

8

are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

B. Evidentiary Objections

Plaintiff objects to certain evidence presented by Defendant. The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence. The Court will not discuss each objection individually. To the extent that the Court has relied on evidence to which Plaintiff objects, such evidence has been found admissible and the objections are overruled.

C. Analysis

To further ERISA's goal of protecting benefit plan participants by requiring the disclosure to participants of information regarding the plan, employee benefit plans must provide plan participants with an SPD. <u>Scharff v. Raytheon Co. Short Term Disability Plan</u>, 581 F.3d 899, 904 (9th Cir. 2009). "The SPD is the 'statutorily established means of informing participants of the terms of the plan and its benefits' and the employee's primary source of information regarding employment benefits." <u>Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.</u>, 293 F.3d 1139, 1143 (9th Cir. 2002); <u>Pisciotta v. Teledyne Indus, Inc.</u>, 91 F.3d 1326, 1329 (9th Cir. 1996). An insured has a duty to read his policy and is bound by its provisions even if he did not read or understand them. <u>Gravell v. Health Net Life Ins. Co.</u>, 2009 WL 210450, *7 (N.D. Cal.).

Plaintiff argues that he did not receive notice within thirty-one days of when the supplemental benefit became available and disputes Defendant's evidence that he was provided notice within

9

this time period. Although Defendant presents strong evidence that other employees in Plaintiff's position purchased the supplemental benefit without proof of good health during the first thirty-one days that it was available, this does not prove that Plaintiff received notice of the supplemental benefit during that period. Therefore, there is a dispute of fact on this issue which, if dispositive, would preclude summary judgment for either party. However, it is not dispositive.

Although Plaintiff states that he was not aware of the availability of the supplemental benefit until his counsel discovered it, he does not dispute that he received the SPDs from 1998 onward, that they were available on Defendant's intranet, or that they accurately describe the supplemental benefit and how to apply for it. Plaintiff argues that he did not have to read the updated SPDs because he was never asked to renew or review his disability coverage and his disability insurance was not part of the annual open enrollment process. However, pursuant to Scharff, Bergt, and Pisciotta, the fact that the SPDs were available to Plaintiff is sufficient to charge him with notice of the availability of the supplemental benefit.

According to Plaintiff, this is still insufficient because, thirty-one days after the supplemental benefit became available, he could no longer qualify for it without proof of good health. However, Plaintiff does not provide evidence that the proof of good health requirement would have prevented him from purchasing the supplemental benefit. According to the evidence in Minton I, Plaintiff did not become disabled until August 2006. Therefore,

10

from 1997 through August 2006, Plaintiff could have applied for the benefit with evidence of good health, but did not do so. Plaintiff has failed to show that Defendant's conduct prevented him from purchasing the supplemental benefit.

Plaintiff cites Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund, 791 F.2d 548, 555 (7th Cir. 1986), which held that the plaintiff's husband was not given adequate notice of his rights under his pension plan from plan booklets stacked at various locations at the husband's workplace or from an advertisement in the magazine published by the husband's union. However, this case relied on temporary ERISA guidelines, which were in effect prior to January, 1977, and are not applicable to Plaintiff's claim because he submitted his claim for benefits after the most recent ERISA regulations went into effect on January 1, 2002. Furthermore, this Seventh Circuit case contravenes the Ninth Circuit authority cited above, which this Court must follow.

Plaintiff argues that the Ninth Circuit has held that the responsibilities of ERISA plan fiduciaries are established by the common law of trusts and, thus, they are required to discharge their duties solely in the interest of the plan participants and beneficiaries. See Acosta v. Pacific Ents., 950 F.2d 611, 618 (9th Cir. 1991). Plaintiff also cites Chappel v. Laboratory Corp. of America, 232 F.3d 719, 726-27 (9th Cir. 2000), which held that the plan administrator breached its fiduciary duty by failing to notify the claimant in its letter denying his claim of a sixty-day time limit in which he was required to demand mandatory arbitration in order to appeal the denial, rather than to rely on notice contained

11

in the SPD.

Chappel is distinguishable.  As noted there, ERISA regulations specifically require that "a fiduciary must give written notice to a plan participant or beneficiary of the 'steps to be taken' to obtain internal review when it denies a claim."  Id. at 726.  Likewise, the plan administrator should know that a claimant may not be aware, when the internal appeal is denied, of a mandatory arbitration clause and a time limit for seeking arbitration because mandatory arbitration is an additional step in the plan's claim procedure and is, to some degree, a substitute for judicial review of the administrator's decision.  Id.  Thus, if the claimant failed to seek arbitration in a timely manner, both arbitration and judicial review of that arbitration were foreclosed.  The court held that, given these consequences, the administrator was not acting in the interest of the participants or beneficiaries if it failed to specifically inform the claimant of the mandatory arbitration requirement.  Id.

The issue here is not the procedure for appealing the denial of benefits, for which there are specific regulations.  Here, although there was a time-limit for applying for the supplemental benefit without evidence of good health, Plaintiff had the opportunity, over a nine-year period, to apply for the supplemental benefit, with proof of good health, but failed to do so.

Based on the foregoing, Plaintiff has not established that he is entitled to judgment as a matter of law on his claim that Defendant breached its fiduciary duty and, thus, his motion for summary judgment is denied.  Furthermore, Plaintiff has not raised

12

a disputed issue of material fact that Defendant breached its fiduciary duty by failing specifically to notify him within the thirty-one days that the supplemental benefit became available. Therefore, Defendant's cross-motion for summary judgment is granted. Because Defendant is granted judgment on Plaintiff's claim for the supplemental ERISA benefit and because Plaintiff's claim for ERISA benefits under the "any occupation" definition is moot, Plaintiff's claim for interest on late ERISA benefits is denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's cross-motions to dismiss and for summary judgment are granted. Plaintiff's claim for interest on late payments of ERISA benefits is denied as moot. Judgment in favor of Defendant shall be entered by the Clerk of the Court. All parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 6/3/2011

CLAUDIA WILKEN
United States District Judge

13